# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Mark Wentworth Home, | ) |
| | ) Case No. 10-10246-MWV |
|          Debtor | ) |

## DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED MARCH 23, 2010

PRETI FLAHERTY BELIVEAU & PACHIOS, PLLP

John M. Sullivan (BNH 01456)
Joshua E. Menard (BNH 06427
57 North Main Street
PO Box 1318
Concord, NH 03302-1318
Telephone:    603.410.1500
Facsimile:    603.410.1501

Counsel for the Debtor

Dated: March 23, 2010

Mark Wentworth Home, the debtor and debtor-in-possession in the above-referenced bankruptcy proceeding, hereby proposes its Plan of Reorganization dated January 27, 2010 to all creditors of the Debtor, as authorized by Section 1121 of the Bankruptcy Code, and hereby moves that the United States Bankruptcy Court for the District of New Hampshire enter an order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code. Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, the Debtor expressly reserves its right to alter, amend, or modify the Plan, one or more times, before the Effective Date.

## **ARTICLE I. Rules of Interpretation and Definitions**

For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in singular or plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference in this Plan to a contract, instrument, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in this Plan to sections, articles, and exhibits are references to sections, articles, and exhibits of or to this Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) in computing any period of time prescribed or allowed by this Plan, the provisions of Rule 9006(c) of the Bankruptcy Rules shall apply.

All terms used herein and defined in the Bankruptcy Code but not otherwise defined herein shall have the meanings assigned to such terms in the Bankruptcy Code. Capitalized terms used herein but not defined in the Bankruptcy Code shall have the meanings assigned to such terms in this Article I and elsewhere in this Plan.

1.1 **"Administrative Expenses"** shall mean Claims for administrative expenses of the Debtor's estate as described in Section 503(b) of the Bankruptcy Code.

1.2 **"Allowed"** shall mean the Allowed Amount of a Claim against the Debtor. A Claim that does not have an Allowed Amount or for which the Allowed Amount is zero dollars shall not be an Allowed Claim.

1.3 **"Allowed Amount"** shall mean:

(I) as to a Claim other than a Claim for Administrative Expenses, (a) the amount of the Claim Scheduled by the Debtor, if (i) the Claim is not Scheduled as disputed, unliquidated, or contingent by the Debtor, (ii) no objection to that amount is filed by the Claims Objection Date, and (iii) the holder of the Claim has not filed by the Bar Date a

properly prepared proof of claim in an amount different from that Scheduled by the Debtor; (b) the amount set forth by the holder of the Claim in a properly prepared proof of claim filed by the Bar Date, if (i) that amount differs from the amount Scheduled by the Debtor and (ii) no objection to the amount stated in the proof of claim is filed by the Claims Objection Date; or (c) if neither clause (a) or clause (b) applies, the amount of such Claim established by a Final Order of the Bankruptcy Court or by mutual agreement between the Debtor and the holder of the Claim; and

(II) as to a Claim for Administrative Expenses, the amount mutually agreed by the Debtor and the holder of the Claim or, if the Debtor and the holder of the Claim cannot agree or if the Claim is a Claim for Administrative Expenses of a professional retained pursuant to Section 327 of the Bankruptcy Code or otherwise requiring Bankruptcy Court approval, the amount established by a Final Order of the Bankruptcy Court.

1.4 **"Avoidance Action"** shall mean any avoidance or recovery action under Sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

1.5 **"Ballots"** shall mean the ballots accompanying the Disclosure Statement upon which holders of impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the voting instructions contained in the Disclosure Statement.

1.6 **"Bankruptcy Code"** shall mean Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.,* as now in effect or hereafter amended.

1.7 **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of New Hampshire and any other court of the United States that takes jurisdiction over matters arising under or related to this Plan.

1.8 **"Bankruptcy Rules"** shall mean, collectively, the Federal Rules of Bankruptcy Procedure promulgated pursuant to Section 2075 of Title 28 of the United States Code and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.9 **"Bar Date"** shall mean, with respect to any Claim against the Debtor, the applicable deadline for filing a proof of such Claim, as set forth herein.

1.10 **"Board of Directors"** shall mean the board of directors of the Reorganized Debtor, as set forth in a notice filed in the Bankruptcy Court by the Debtor on or before the date that is ten (l0) days prior to the first date on which the Confirmation Hearing is scheduled.

1.11 **"Cash"** shall mean cash, cash equivalents, and other readily marketable securities or instruments issued by an entity other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, and certificates of deposit issued by banks, including interest earned thereon.

1.12 **"Causes of Action"** shall mean any and all actions, suits, proceedings, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies,

agreements, promises, variances, setoff or recoupment rights, trespasses, damages, or judgments based on any act or omission or other event occurring prior to the Effective Date, including without limitation Avoidance Actions.

1.13 **"Chapter 11 Case"** shall mean the voluntary bankruptcy reorganization case of the Debtor commenced by the filing by the Debtor of a petition for relief with the Bankruptcy Court on the Filing Date, and known as Chapter 11 Case No. 10-10246-MWV.

1.14 **"Claim"** shall have the meaning assigned to that term in Section 101 of the Bankruptcy Code.

1.15 **"Claims Objection Date"** shall mean for all Claims against the Debtor the date that is ten (10) days following the Effective Date; <u>provided</u> that the failure to object to a Claim by the Objection Date shall not constitute a waiver or release of any affirmative claims the Debtor may be entitled to assert against a creditor, including, without limitation, Avoidance Actions.

1.16 **"Confirmation Date"** shall mean the date under applicable law on which an order of the Bankruptcy Court confirming this Plan is entered.

1.17 **"Confirmation Hearing"** shall mean the hearing before the Bankruptcy Court regarding the confirmation of the Plan. Any reference herein to the date of the Confirmation Hearing shall refer to the date that the Confirmation Hearing begins.

1.18 **"Creditors Matrix"** shall mean the matrix of the Debtor's creditors filed with the Bankruptcy Court on January 27, 2010, as amended and supplemented during the course of the Chapter 11 Case.

1.19 **"Debtor"** shall mean Mark Wentworth Home, the debtor and debtor-in-possession in the Chapter 11 Case.

1.20 **"Disclosure Statement"** means the Disclosure Statement relating to the Plan including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court, as thereafter amended, supplemented, or modified in accordance with applicable law.

1.21 **"Effective Date"** shall mean the date upon which all the conditions to effectiveness contained in Section 5.1 of this Plan shall have been satisfied or waived in accordance with Section 5.2 of this Plan.

1.22 **"Filing Date"** shall mean January 27, 2010, the date on which the Debtor filed with the Bankruptcy Court its petition for relief under Chapter 11 of the Bankruptcy Code.

1.23 **"Final Order"** shall mean an order of the Bankruptcy Court that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or to seek review or rehearing has expired or has been waived, without any such appeal, review, or rehearing having been sought, or, if any such appeal, review, or rehearing has been sought, the order has been affirmed

and the time to seek further appeal, review, or rehearing has expired or has been waived, causing such order to have become final and non-appealable in accordance with applicable law.

1.24    **"First Distribution Date"** shall mean, with respect to payments to creditors in Classes 2-6, the date that is sixty (60) days following the Effective Date.

1.25    **"Subsequent Distribution Date(s)"** shall mean, with respect to payments to creditors in Classes 2-5, the first business day that occurs more than twelve (12) months following the Effective Date, and the first business day that occurs more than twenty-four (24) months following the Effective Date.

1.26    **"Plan"** shall mean this Plan of Reorganization of the Debtor, as the same may be altered, amended, or modified by the Debtor from time to time.

1.27    **"Priority Claim"** shall mean all or that portion of an Allowed Claim entitled to priority under Section 507 of the Bankruptcy Code.

1.28    **"Pro Rata"** shall mean that percentage of the total amount of funds being distributed to a certain class of Claims that is equal to the percentage which a particular Allowed Claim bears to all Allowed Claims entitled to share in that distribution.

1.29    **"Reorganized Debtor"** shall mean the Debtor from and after the Effective Date, and references herein to the Debtor that pertain to the Debtor from and after the Effective Date shall be deemed references to the Reorganized Debtor.

1.30    **"Scheduled"** shall mean listed on the Debtor's Schedules.

1.31    **"Schedules"** shall mean the schedules of assets and liabilities, the list of holders of Claims, and the statement of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009.

1.31    **"Secured Claim"** shall mean all or any part of any Allowed Claim that is a secured claim pursuant to Section 506(a) of the Bankruptcy Code.

### ARTICLE 2. Administrative Expenses and Priority Claims

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses, and Priority Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with this Article 2 and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

2.1     **Administrative Expenses**

Claims for Administrative Expenses are Claims constituting a cost or expense of administration of the Chapter 11 Case under Sections 503(b) of the Bankruptcy Code. Such Claims include all actual and necessary costs and expenses of preserving the estates of the Debtor, all actual and necessary costs and expenses of operating the business of the Debtor, any obligations incurred or assumed by the Debtor in connection with the conduct of their business.

All Allowed Administrative Expenses arising from trade and service debts and obligations incurred in the normal course of business by the Debtor during its Chapter 11 Case shall be paid in full by the Debtor in accordance with their terms as they come due in the ordinary course of business, or as otherwise agreed by the Debtor and the holder of the Claim. All other Administrative Expenses allowed under Section 503(b) of the Bankruptcy Code, including, without limitation, any Allowed Administrative Expenses of professionals retained pursuant to Section 327 of the Bankruptcy Code, to the extent that such Claims and expenses constitute Allowed Claims, shall be paid by the Debtor in full in immediately available funds by the latest of (a) ten (10) days after the date that an order of the Bankruptcy Court allowing the Claim becomes a Final Order, (b) the Effective Date, or ( c) such later date as may be agreed by the Debtor and the respective holder(s) of such Claim.

The Debtor estimates that Administrative Expense Claims will total approximately $143,940 and will be composed of: (i) $100,000 for legal services provided by Preti; (ii) $15,000 for legal services provided to the Unsecured Creditors Committee; (iii) $5,000 for the fees of the Ombudsman; (iv) $15,000 for the fees of other professional (the appraisers); and (v) $8,940 for United States Trustee fees for the next four quarters.

The Debtor is not presently aware of any Priority Claims.

## ARTICLE 3. Designation of Classes of Claims

The categories of Claims listed below shall classify Claims for all purposes related to this Plan, provided that the classification of Claims hereunder shall not be binding on the Debtor or the Reorganized Debtor for any other purposes, including without limitation for the purposes of federal income tax or other federal, state, or local taxes that may be owing by the Debtor at any time. A Claim shall be deemed classified in a particular class only to the extent that the Claim conforms to the description of Claims in that class and shall be deemed classified in a different class to the extent that any remainder of such Claim conforms to the description of Claims in such different class. A Claim shall be in a particular class and shall be entitled to treatment as a Claim in that class only to the extent of the Allowed Amount of that Claim.

For purposes of this Plan, Claims shall be classified as follows:

3.1     *Class 1- Secured Claims*

Class 1 consists of the secured claim of BONY/TD Bank to the extent such claim is allowed by the Court. The Debtor anticipates that the Class 1 Claim will be allowed at no more

than $6.244 million.  Class 1 Claims are impaired under the Plan. Each holder of a Class 1 Claim is entitled to vote on the Plan on account of its respective Class 1 Claim.

BONY/TD Bank disputes the Debtor's valuation of its collateral and reserves its rights to contest the Debtor's valuation as well as object to its treatment of its claim(s) in the Debtor's Disclosure Statement, Chapter 11 Plan and all amendments thereto.

BONY/TD Bank will retain its current mortgages and security interests until BONY/TD Bank's secured claim, as determined by the Bankruptcy Court or otherwise agreed to by the parties, is paid in full pursuant to the terms of the Debtor's Chapter 11 Plan.

3.2     *Class 2 – Unsecured Portion of Mortgagee's Claim*

Class 2 consists of the unsecured portion of the Debtor's indebtedness to BONY/TD Bank.  The Debtor anticipates that the Class 2 Claim will be allowed at no more than $7.025 million.  Class 2 Claims are impaired under the Plan. Each holder of a Class 2 Claim is entitled to vote on the Plan on account of its respective Class 2 Claim.

3.3     *Class **3** – Lehman Brothers Unsecured Claim*

Class 3 consists of the unsecured claim of Lehman Brothers.  The Debtor anticipates that the Class 3 Claim will be allowed at no more than $1.8 million.  Class 3 Claims are impaired under the Plan. Each holder of a Class 3 Claim is entitled to vote on the Plan on account of its respective Class 3 Claim.

3.4     *Class 4 – Living Innovations Unsecured Claim*

Class 4 consists of the unsecured claim of Living Innovations, Inc.  The Debtor anticipates that the Class 4 Claim will be allowed at no more than $209,000.  Class 4 Claims are impaired under the Plan. Each holder of a Class 4 Claim is entitled to vote on the Plan on account of its respective Class 4 Claim.

3.5     *Class 5 – General Unsecured Claims*

Class 5 consists of all Allowed Claims of every kind and nature which any Entity holds against the Debtor other than Claims for Administrative Expenses, Priority Claims, Administrative Convenience Claims and Claims of Classes 1-4 (approximately $55,126).  The Class 5 Claims include, without limitation, all such Allowed Claims arising out of goods sold or services rendered to the Debtor prior to the Petition Date and any Allowed Claims that are characterized as prepetition general unsecured Claims pursuant to stipulations between the parties or pursuant to Final Order of the Bankruptcy Court.  Class 5 Claims are impaired under the Plan. Each holder of a Class 5 Claim is entitled to vote on the Plan on account of its respective Class 5 Claim.

3.6     *Class 6 – Administrative Convenience Class*

Class 6 consists of all Administrative Convenience Claims against the Debtor. Claimants in the Administrative Convenience Class includes all Allowed Claims against the Debtor in the amount of $2,000.00 or less (in the aggregate for any one Creditor) or those creditors that elect to be reduce their Allowed Claim to the amount of $2,000.00 in their ballot. The total amount of claims in this case is in the approximate amount of $14,325.

### ARTICLE 4. Treatment of Classes of Claims[1]

4.1     *Class 1 Treatment*.  Pursuant to the Plan, on account of and in full satisfaction, release, and discharge of the Class 1 Claims, the Debtor will amortize the Allowed amount of such secured claim in equal monthly payments over the balance of the existing term (27 years) at a fixed rate of interest set at 3% over the present *Wall Street Journal* Prime Rate (i.e. 6.25%). Assuming an Allowed Claim of $6.244 million, payments shall commence one month after Confirmation at the monthly rate of $39,940.16.  BONY/TD Bank will retain its current mortgages and security interests until BONY/TD Bank's secured claim, as determined by the Bankruptcy Court or otherwise agreed to by the parties, is paid in full pursuant to the terms of the Debtor's Chapter 11 Plan.

4.2     *Classes 2-5 Treatment*.  Pursuant to the Plan, on account of and in full satisfaction, release, and discharge of all Class 2-5 Claims, each holder of an Allowed Class 2-5 Claim as part of the balloting process shall be entitled to elect to receive either:

   (i)    on the First Distribution Date, a distribution in cash equal to three percent (3%) of the Allowed Amount of the Class 2-5 Claim of such holder; or

   (ii)   three (3) equal annual distributions in cash each equal to two percent (2%) of the Allowed Amount of the Class 2-5 Claim of such holder (in aggregate a 6% dividend).  Such annual payments shall be made on the First Distribution Date and the Subsequent Distribution Dates.

The holders of Class 2-5 Claims shall be entitled to no other or further distributions than is elected by them as part of the balloting process.

4.3     *Class 6 Treatment*.  Pursuant to the Plan, on account of and in full satisfaction, release, and discharge of all Class 6 Claims, each holder of an Allowed Class 6 Claim shall receive a within sixty (60) days of Confirmation a distribution in cash equal to four and one-half percent (4.5%) of the Allowed Amount of the Class 6 Claim of such holder.

### ARTICLE 5. Conditions Precedent to the Effective Date

5.1     All of the following conditions must be satisfied or waived in accordance with the Plan prior to the occurrence of the Effective Date (the "Conditions"):

---

[1] If TD Bank elects to make its 11 U.S.C. § 111(b)(2) election and/or the valuation of its collateral is later determined to be greater than the Debtor's valuation, then there may be additional funds available to Classes 2-6. which may result in an increased dividend to those classes.

a. An order confirming the Plan, acceptable to the Debtor, shall have been entered by the Bankruptcy Court, shall be in full force and effect, and shall have become, and shall be, a Final Order;

b. All authorizations, filings, consents, regulatory approvals, rulings, letters, opinions, or documents, if any, that are determined by the Debtor to be necessary to implement the Plan shall have been made, provided, or obtained and shall be in full force and effect.

Except as otherwise prohibited by the Bankruptcy Court or the Bankruptcy Code, any of the Conditions may be waived in a writing signed by the Debtor, in its sole discretion. If the Confirmation Order is vacated for any reason, the Plan shall be null and void in all respects and nothing contained in the Plan or this Disclosure Statement shall constitute a waiver or release of any Claims by or against the Debtor, shall prejudice in any manner the rights of the Debtor, or shall constitute an admission, acknowledgement, offer, or undertaking by the Debtor in any respect.

5.2 **Effect of Vacation of Confirmation Order.** If the Confirmation Order is vacated in accordance with Section 5.1 above or for any other reason, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall constitute a waiver or release of any Claims by or against, the Debtor, shall prejudice in any manner the rights of the Debtor, or shall constitute an admission, acknowledgement, offer, or undertaking by the Debtor in any respect.

5.3 **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.** To the extent that any impaired class of Claims votes to reject or otherwise does not accept this Plan, the Debtor reserves the right to request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code.

### ARTICLE 6. Means of Execution of Plan

6.1 **Vesting of Control in the Debtor.** As of the Effective Date, (i) pursuant to the provisions of Sections 1141(b) and (c) of the Bankruptcy Code, all then existing property, assets, and effects of the Debtor's estate shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges, encumbrances, and interests of creditors, except as expressly provided hereunder and in the order confirming this Plan; (ii) the Reorganized Debtor may operate its businesses and may use, acquire, and dispose of property free of restrictions imposed under the Bankruptcy Code; and (iii) the management, control, and operation of the Reorganized Debtor shall become the general responsibility of the Board of Directors.

The executive management of the Debtor is comprised of:

a. Deborah M. Rodier, R.N., B.A., Ms. Rodier is the Debtor's Executive Director, Administrator Supported Residential Care Unit, Director of Resident Services, Director of Nursing and MDS Coordinator. Ms. Rodier has a B.A. in business administration and a degree

in nursing and holds various certifications in geriatric care. Ms. Rodier has been employed by the Debtor since 1998 and her annual compensation is $114,660.

      b.      Verna Brewer, R.N., Ms. Brewer is the Debtor's Assisted Living Administrator. Ms. Brewer has an A.D. in nursing and has worked for the Debtor, in various capacities, for over 14 years. Ms. Brewer's annual compensation is $87,360.

      c.      Carolee Bacon, R.N., B.S., Ms. Bacon is the Debtor's Director of Nursing. Ms. Bacon holds a bachelor of science in nursing and has held various positions with the Debtor since 1997. Ms. Bacon's annual compensation is $76,960.

6.2    **Effective Date Actions.** On the Effective Date, the Debtor shall make any payment required hereunder to be made by the Debtor on or immediately following the Effective Date shall be made by the Debtor as soon as practicable following the Effective Date.

6.3    **Executory Contracts.** To the extent the Derivative Agreement with Lehman Brothers has not as a matter of law been terminated pre-petition, such Agreement is rejected under this Plan. All other executory contract and unexpired leases of the Debtor will be assumed on the Effective Date. All of the Debtor's pre-petition insurance policies and any agreements, documents, or instruments relating thereto, are treated as executory contracts under this Plan. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor may hold against any entity, including, without limitation, the insurer under any of the Debtor's policies of insurance.

All the remaining executory contracts and leases listed on Schedule G of the Debtor's Petition will be assumed.

6.4    **Compliance with Tax Requirements.** In connection with this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions under this Plan shall be subject to applicable withholding and reporting requirements. Notwithstanding any other provision of this Plan, each Entity who receives any distribution pursuant to this Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligation imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

6.5    **Setoffs.** Notwithstanding anything to the contrary herein, the Debtor may, pursuant to the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and against the distributions to be made on account of that Allowed Claim pursuant to this Plan (before any such distribution is made), the Claims, rights, and Causes of Action that the Debtor holds against the holder of that Allowed Claim, provided that neither the failure of the Debtor to set off nor the allowance of a Claim shall constitute a waiver or release by the Debtor of any Claim, right, or Cause of Action.

6.6    **No Postpetition Interest.** Notwithstanding anything to the contrary herein, no interest accruing on or after the Filing Date shall be payable on any Claim, <u>except</u> as may be required by law on any Allowed Administrative Expenses, Priority Claims, or Secured Claims.

6.7     **Cancellation of Instruments.** On the Effective Date, except to the extent provided otherwise herein, all notes, certificates, security agreements, mortgages, pledges, indemnities, collateral assignments, undertakings, guarantees, and other instruments and documents creating a Claim against the Debtor will no longer be outstanding and will be cancelled, retired, and deemed terminated, and will cease to exist, as permitted by Section 1123(a)(5)(F) of the Bankruptcy Code.

6.8     **Prepayment and Agreed Less Favorable Treatment.** To the extent a creditor in Classes 2-5 elects deferred payments over 3 years, the Debtor may on *a Pro Rata* basis prepay obligations hereunder on account of such Claims at any time after the First Distribution Date. Notwithstanding anything to the contrary herein, any holder of any Claim may waive any right hereunder or agree to a less favorable treatment than the treatment to which it is entitled hereunder. Any such waiver or agreement shall inure to the benefit of the Debtor and shall not increase the *Pro Rata* rights of other holders of Claims.

6.9     **Retention of Claims.** Following the Effective Date, pursuant to Section 1123 (b) of the Bankruptcy Code, except as otherwise provided in this Plan, the Debtor will retain all Causes of Action that the Debtor had or had power to assert immediately prior to the Effective Date, and may commence or continue in any appropriate court or tribunal, including, without limitation, in the Bankruptcy Court, any suit or other proceeding for the enforcement of such Causes of Action.

6.10    **Discharge.** The distributions and other agreements in this Plan shall be in full and complete satisfaction of, and will result in the full and complete discharge, satisfaction, and release of, all Claims against the Debtor that arose prior to the Confirmation Date. Except as expressly provided herein or in an order confirming the Plan, confirmation of this Plan will, as of the Effective Date, discharge the Debtor from all Claims and any other debts that arose prior to the Effective Date and all debts of the type specified in Sections 502(g), 502(h), and 502(i) of the Bankruptcy Code, whether or not (i) a proof of claim based on such a debt has been filed or is deemed to have been filed pursuant to Section 501 of the Bankruptcy Code, (ii) a Claim based on such a debt is Allowed under this Plan or pursuant to Section 502 of the Bankruptcy Code, or (iii) the holder of a Claim based on such a debt has accepted this Plan.

6.11    **Term of Injunctions and Stays.** Except as provided herein or in the order confirming this Plan, as of the Effective Date, all Entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged, are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, or liabilities: (a) commencing, conducting or continuing in any manner, directly or indirectly, any action or other proceeding against the Reorganized Debtor or its property; (b) creating, perfecting or enforcing any lien or encumbrance against the Reorganized Debtor or its property; (c) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Reorganized Debtor or its property; (d) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means any judgment, award, decree, or order; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

6.12    **Further Authorization.** The Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings as it deems necessary to carry out and further the intentions and purposes, and give full effect to the provisions of the Plan.

### ARTICLE 7. Bar Dates and Objections to Claims

7.1    **Administrative Expenses Bar Date.** All requests for payment of administrative costs and expenses permitted under Section 503(b) of the Bankruptcy Code (except for taxes, trade debt, or customer deposits incurred in the ordinary course of business, and applications under Section 330 for final compensation of professional Persons for services rendered in this Chapter 11 proceeding) shall be filed with the Bankruptcy Court and served on counsel to the Debtor, no later than the day prior to the first date on which the Confirmation Hearing is scheduled or such other date as may be set by the Court. Any such Claim that is not filed by such date shall be forever barred and shall not constitute an Allowed Claim.

7.2    **Original Bar Date**. All holders of Claims against the Debtor shall be subject to the Bar Date for nongovernmental Claims and the Governmental Bar Date for Claims of Governmental Units. Any Claims of such holders that have not been filed by such applicable date shall be forever barred and shall not constitute Allowed Claims.

7.3    **Objections to Claims.** Objections to Claims against the Debtor (including rejection claims filed pursuant to Section 7.2, if any) shall be filed on or before the Claims Objection Date and shall be resolved before the Bankruptcy Court.

7.4    **Estimation of Claims.** The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanisms approved by the Bankruptcy Court.

7.5    **Payments and Distributions on Disputed Claims.** Notwithstanding any provision in this Plan or the order confirming this Plan to the contrary, except as otherwise agreed to by the Debtor in its sole discretion, or as otherwise ordered by the Bankruptcy Court, no partial payments and no partial distributions shall be made with respect to a disputed Claim until the resolution of such disputes by settlement or Final Order. After a disputed Claim becomes an

Allowed Claim, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled in accordance with this Plan. Notwithstanding the foregoing, any holder of both an Allowed Claim(s) and a disputed Claim(s) shall receive the appropriate payment or distribution on the Allowed Claim(s), although, except as otherwise agreed by the Debtor in its sole discretion, no payment or distribution shall be made on the disputed Claim(s) until such dispute is resolved by settlement or Final Order. The Debtor may, in its sole discretion, reserve from any distribution an amount equal to or less than the amount of any disputed Claims, and, in the case of any such reserve, the Debtor may adjust the *Pro Rata* distributions to the holders of Allowed Claims accordingly. Notwithstanding anything to the contrary herein, except as provided in Section 6.6 hereof with respect to Administrative Expenses, Priority Tax Claims, and Secured Claims, no interest shall be paid on any disputed Claim that becomes an Allowed Claim.

7.6     **Settlement of Disputed Claims.** From and after the Effective Date, the Reorganized Debtor shall have the authority, without the need for Bankruptcy Court approval, to settle any objection to any Claim, and, in its sole discretion, to prosecute, waive, or settle any Cause of Action that the Reorganized Debtor may have.

## ARTICLE 8. Retention of Jurisdiction

8.1     Following the Effective Date, the United States Bankruptcy Court for the District of New Hampshire will retain jurisdiction for the following purposes:

   a.   To allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Expense Claim or Priority Claim and the resolution of any and all objections to the allowance or priority of Claims;

   b.   To grant or deny any application for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan;

   c.   To resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

   d.   To ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan, including ruling on any motion filed pursuant to this Plan;

   e.   To decide or resolve any motions, adversary proceedings (whether pending on the Effective Date or instituted thereafter), contested or litigated matters, and any other matters, and to grant or deny any applications involving the Debtor that may be pending on the Effective Date;

f.  To enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with this Plan, the Disclosure Statement, or the order confirming this Plan;

g.  To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan;

h.  To permit the Debtor to modify this Plan, before or after the Effective Date, pursuant to Section 1127 of the Bankruptcy Code, the order confirming this Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the order confirming this Plan, or to remedy any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the order confirming this Plan, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan, the Disclosure Statement or the order confirming this Plan, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

i.  To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of this Plan or the order confirming this Plan;

j.  To resolve any cases, controversies, suits, or disputes with respect to the discharges, releases, injunctions, and other provisions contained in this Plan, and to enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

k.  To enter and implement such orders as are necessary or appropriate if the order confirming this Plan is for any reason modified, stayed, revised, revoked, or vacated, or if distributions pursuant to this Plan are enjoined or stayed;

l.  To determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code, including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Filing Date through and including the Effective Date;

m.  To determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the order confirming this Plan, or any contract, instrument, release, indenture, or other agreement or document created in connection with this Plan, the Disclosure Statement, or the order confirming this Plan; and

n. To enter a Final Order concluding the Debtor's Chapter 11 Case.

### ARTICLE 9. Miscellaneous Provisions

9.1 **Payment of Statutory Fees.** All fees payable pursuant to Section 1930 of Title 28 of the United States Code shall be paid by the Debtor on or before the Effective Date, or by the Reorganized Debtor after the Effective Date, when otherwise due and owing.

9.2 **Modification of Plan.** Subject to the limitations contained herein, (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the order confirming this Plan and (b) after the entry of the order confirming this Plan, the Reorganized Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with Section 1127(b) of the Bankruptcy Code, and may remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

9.3 **Revocation of Plan.** The Debtor reserves the right, at any time prior to the Effective Date, to revoke and withdraw this Plan.

9.4 **Plan and Confirmation Order Controls.** To extent there is an inconsistency or ambiguity between any term or provision contained in this Plan and any term or provision contained in the Disclosure Statement, the Settlement Agreement, or any other document other than the order confirming this Plan, this Plan shall control. To the extent that there is an inconsistency or ambiguity between any term or provision contained in this Plan and any term or provision contained in the order confirming this Plan, the order confirming this Plan shall control.

9.5 **Successors and Assigns.** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

9.6 **Reservation of Rights.** Except as expressly set forth herein, this Plan shall have no force or effect unless the Bankruptcy Court shall enter an order confirming this Plan and the Effective Date occurs. None of the filing of this Plan, any statement or provision contained in this Plan or the Disclosure Statement, nor the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to any Claims prior to the Effective Date.

9.7 **Section 1145 and Section 1146 Exemptions**. The issuance of the any note or other instrument issued in connection herewith shall be exempt under Section 1145 from securities laws, if any, applicable thereto. Pursuant to Section 1146(c) of the Bankruptcy Code, (i) the issuance, transfer, or exchange of notes or issuance of debt or equity securities under this Plan; (ii) the creation of any mortgage, deed of trust, or other security interest; and (iii) any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in

connection with any of the transactions contemplated under this Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax. All sale transactions consummated by the Debtor and approved by the Bankruptcy Court on and after the Filing Date through and including the Effective Date, including, without limitation, the sales, if any, by the Debtor of owned property or assets pursuant to Section 363(b) of the Bankruptcy Code and the assumptions, assignments, and sales, if any, by the Debtor of unexpired leases of non-residential real property pursuant to Section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with this Plan and, therefore, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, or other similar tax.

9.8     **Further Assurances.** The Debtor, the Reorganized Debtor, and all holders of Claims receiving distributions under the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

9.9     **Severability.** Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan so long as such determination does not affect any material term or benefit of this Plan.

9.10    **Limitation of Liability.**  Neither the Debtor nor any of its officers, directors, employees or members (collectively, the "Exculpated Persons"), will have or incur any liability to any Entity for any act taken or omitted to be taken in connection with or related to formulating, preparing, disseminating, implementing or confirming the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or any other act taken or omitted to be taken in connection with the Debtor's Chapter 11 Case; provided that the foregoing provisions shall have no effect on the liability of any Entity that results from (1) any act or omission that is determined in a Final Order to have constituted fraud, gross negligence, or willful misconduct; or (2) any breach of the confirmed Plan.

9.11    **Governing Law.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New Hampshire, without giving effect to conflict of law principles.

9.12    **Service of Documents.** Any pleading, notice or other document required by this Plan to be served on or delivered to the Debtor or the Reorganized Debtor shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) national overnight courier, freight prepaid, addressed to Mark Wentworth Home, Inc.; c/o Preti Flaherty, PLLP, P.O. Box 1318, Concord, NH 03302-1318, Attn: John M. Sullivan, Esq.

9.13    **Sections 1125 and 1126 of the Bankruptcy Code**. As of and subject to the occurrence of the Confirmation Date, (i) the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, Section 1125(a) of the Bankruptcy Code, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with

such solicitation and (ii) the Debtor and its affiliates, agents, directors, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under this Plan, and therefore are not liable, and on account of such offer, issuance and solicitation will not be liable, at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of any securities under this Plan.

9.14    **Allocation of Plan Distributions.** All distributions in respect of Claims will be allocated first to the original principal amount of such Claims (as determined for federal income tax purposes), and any excess will be allocated to the remaining portion, if any, of such Claims.

9.15    **Request for Expedited Determination of Taxes.** The Reorganized Debtor shall have the right to request an expedited determination under Section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Filing Date through and including the Effective Date.

Dated: March 23, 2010

                MARK WENTWORTH HOME
                By its attorneys,

                PRETI FLAHERTY PLLP


          By: /s/ John M. Sullivan
                John M. Sullivan (BNH 01456)
                Joshua E. Menard (BNH 06427)
                P.O. Box 1318
                Concord, NH 03302-1318
                Telephone:    603-410-1500
                Facsimile:    603-410-1501
                Email: jsullivan@preti.com

                Counsel for the Debtor and
                Debtor In Possession